UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MICHAEL GUEVARA, a minor, by his
mother and best friend ELBA GUEVARA,

                  Plaintiff,

-against-

PHILIP AMICONE, individually,
EDMUND HARTNETT, individually,
CITY OF YONKERS, New York, POLICE
OFFICER JOHN DOE #1, individually,
POLICE OFFICER JOHN DOE #2, individually,
and DETECTIVE JOHN DOE #3, individually,

                  Defendants.

------------------------------------------------------------x

**ORIGINAL**

**07 CIV. 6941**

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff MICHAEL GUEVARA by his mother and best friend ELBA GUEVARA, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately the result of conduct jointly engaged in by the Defendants while acting under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by reason of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff MICHAEL GUEVARA (hereinafter "Michael") is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. Since he is under the age of eighteen, he brings this action by his mother and best friend, Elba Guevara. At all times relevant to this complaint Plaintiff was employed by The Guardian News, Inc., a New York domestic business corporation having its principal office for the conduct of business at 251 North Avenue, New Rochelle, New York. On a weekly basis the corporation publishes and disseminates, by *inter alia*, use of so-called newsracks, a free newspaper known as "The Westchester Guardian (hereinafter "Guardian")". That publication focuses on and reports about amongst other things municipal corporate corruption in the incumbent administration of the City of Yonkers.

4. Defendant PHILIP AMICONE (hereinafter "Amicone"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected, incumbent Mayor of the Defendant City.

5. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed, incumbent Police Commissioner for the Defendant City.

6. Defendant CITY OF YONKERS, New York (hereinafter "City"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

7. Defendants POLICE OFFICER JOHN DOE #1, POLICE OFFICER JOHN DOE #2, and DETECTIVE JOHN DOE #3, each of whom is sued in his individual and

personal capacities only, are sworn members of the City's Police Department. Although their identities are presently unknown, their names will be ascertained during discovery at which time Plaintiff will seek leave of the Court to add their actual names to the complaint.

## THE FACTS

8. On or about July 9, 2007, the front page headline in the Guardian read: "A Tale of Two Cities", beneath which to the left was a photograph of the Mayor of Mount Vernon, New York (Ernie Davis), and beneath which to the right was a photograph of Amicone. The Davis photograph bore the legend: "DUMB". The Amicone photograph bore the legend: "DUMBER" (hereinafter collectively referred to as "DUMB & DUMBER") - - in connection with which readers were invited to "See In Our Opinion, p4".

9. In the editorial concerning the front page story, captioned "In Our Opinion . . .Sodom and Gomorrah", the Guardian expressed *inter alia* the following thoughts regarding Davis and Amicone:

> "We must sadly conclude that Davis and Amicone have each been abject failures, little more than caretakers, at best, not likely to improve the circumstances of the city they have been entrusted with, if placed back into their present positions. In short, we believe Ernie Davis and Phil Amicone have not only squandered vast human and financial resources, but also the wonderful opportunity to bring about significant positive change.

Consider the fact that Mount Vernon and Yonkers are each under Federal Investigation...in connection with projects and programs involving huge sums of money...There's a distinct odor of fish somehow attached to these financial mysteries.

...As regards crime, there is no denying that street crime and gun violence in both Yonkers and Mount Vernon have been spiraling out of control under Amicone and Davis respectively. Additionally, the Yonkers Police Department has had, and continues to have, a well-deserved reputation for police brutality, a problem neither Phil Amicone nor Commissioner Hartnett have made any convincing effort to abate.

      \*      \*      \*

The decay and destruction of formerly strong, proud neighborhoods and public schools under Davis and Amicone has been the inevitable product of corrupt, uninspired administrations more concerned with satisfying and fattenening political powerbrokers and criminal elements such as Giulio Cavallo, Zehy Jereis, Nicky Spano, Larry Schwartz, Reggie LaFayette, and their ilk...In short, we believe Ernie and Phil have been marching to the beat of the wrong drummer for quite some time, and are not likely to alter their cadence anytime soon."

10. During and throughout the week of July 9, 2207, the owner of the Guardian and a number of Guardian employees repeatedly sought to place inside and/or outside

Yonkers' City Hall newsracks for the distribution of DUMB & DUMBER as contained in the Guardian.

11. In that connection pursuant to a coordinated action orchestrated by Amicone, Hartnett, and numerous members of the City's police department, all copies of the Guardian were repeatedly removed from both its newsracks and the counter referenced *infra* in paragraph "13(b)", confiscated, and discarded by Defendants - - hateful conduct motivated in whole or in substantial respect by the substantive content of DUMB & DUMBER and the editorial opinion.

12. Also in that connection and pursuant to the same coordinated action, Guardian newsracks were repeatedly confiscated and/or discarded by Defendants, action taken by similarly motivated hateful conduct.

13. As a further consequence of that coordinated action, Defendants repeatedly targeted employees of The Guardian News, Inc.", as indicated *infra*, threatened them with arrest, and charged them criminally - - with the same motivation and the objective of entirely stopping dissemination of the Guardian in and about City Hall.

14. By way of contrast publications favorable to Amicone and the City (such as "Yonkers City of Vision") were permitted by the Defendants to be dispensed from *inter alia*:

      a. A newsrack, located on a stairway in City Hall, and

      b. A counter at a security desk in City Hall as manned by a uniformed Police Officer.

15. Also by way of contrast, persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals:

    a. In the stairway newsrack referenced *supra*, and,

    b. On the security desk counter as referenced *supra*.

16. On July 11, 2007, Plaintiff amongst others was assigned by The Guardian News, Inc. to work at and about Yonkers' City Hall and in that connection:

    a. Inside City Hall to non-disruptively give to willing recipients, copies the Guardian, and,

    b. Outside City Hall to non-disruptively give to willing recipients, copies of the Guardian.

17. As a consequence of Plaintiff's conduct inside City Hall Detective John Doe #3 displayed his police shield to Plaintiff, remarked with respect to Plaintiff's distribution of DUMB & DUMBER: "Are you kidding?", and directed Plaintiff to leave the premises.

18. When Plaintiff then exited City Hall and continued his non-disruptive distribution of the Guardian to willing passers by, Detective John Doe #3 approached him again, requested back-up from Police Officer John Doe #1 and Police Officer John Doe #2 who, on behalf of all Defendants:

    a. Issued to Plaintiff a criminal information charging him with distributing the Guardian at City Hall,

    b. Ordered him to leave the premises,

    c. Threatened to arrest/incarcerate him should he return to distribute the Guardian, and,

    d. Secured Plaintiff's departure from the City by intimidation.

19. Under the premises Defendants' conduct has caused Plaintiff: to be chilled in the exercise of his First Amendment rights as a consequence of which he will not prospectively distribute the Guardian in the City; emotional upset; public embarrassment; public humiliation; shame; impairment of his right to liberty to the extent he is required by the criminal information to appear in Yonkers City Court under threat of issuance of a bench warrant; anxiety; punishment for exercising his right of free speech; selectively punished, in contrast to distributors of periodicals favorable to Amicone and the City; and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

21. Under the premises Defendants violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

23. Under the premises Defendants violated Plaintiff's rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

a. Awarding against all Defendants such compensatory damages as the jury may determine,

b. Awarding against the individually named Defendants such punitive damages as the jury may impose,

c. Permanently enjoining Defendants from interfering with Plaintiff's distribution and/or dissemination of the Guardian within the City and/or City Hall,

d. Declaring that Defendants' conduct violated Plaintiff's rights as guaranteed by the First and Fourteenth Amendments,

e. Awarding as against all Defendants reasonable attorney's fees and costs, and,

f. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
July 31, 2007

LOVETT & GOULD, LLP
Attorneys for Plaintiff
By:
Jonathan Lovett (4854)
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401