UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL GUEVARA, a minor, by his mother and best
friend, ELBA GUEVARA,

                                Plaintiff,

                 -against-

PHILIP AMICONE, individually, EDMUND HARTNETT,
individually, CITY OF YONKERS, New York, POLICE
OFFICERS JOHN DOE # 1, individually, POLICE
OFFICERS JOHN DOE # 2, POLICE OFFICERS JOHN
DOE# 3, individually,

                          Defendants.
------------------------------------------------------------------------x

CONSOLIDATED
Case No. 07 Civ. 6941 (CS)


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, ATTORNEYS FEES AND COSTS AND MOTION TO STRIKE AND/OR DISMISS THE COMPLAINT OF PLAINTIFF GENE SMITH

JONATHAN LOVETT, ESQ.
*Attorney for PlaintiffS*
By:  Amy L. Bellantoni (AB3061)
37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................i

PRELIMINARY STATEMENT.......................................................1

FACTUAL BACKGROUND..........................................................1

SUMMARY JUDGMENT STANDARD...............................................2

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT.....................3

POINT I

.Plaintiffs Are Entitled to Judgment as a Matter of Law on Their First
Amendment Claims.......................................................3

POINT II

Plaintiffs Are Entitled to Judgment as a Matter of Law on Their
Equal Protection Claims....................................................6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT...............................................................8

POINT I

Plaintiffs Are Asserting a Violation of Their Rights as Guaranteed By the
First Amendment; This is Not a First Amendment Retaliation Claim.............8

POINT II

Defendants Have Failed to Establish the Absence of Material Issues of
Fact Regarding Plaintiffs' Equal Protection Claim...............................11

POINT III

Plaintiffs Have Suffered Compensatory Damages; Summary Judgment
Should Be Denied................................................16

POINT IV

Defendants Have Failed to Demonstrate the Absence of Material Issues

of Fact Regarding Plaintiffs' Claims for Punitive Damages..........................20

POINT V

As Defendants Cannot Prevail in Their Summary Judgment Motion, Legal
Fees and Costs Should Be Denied................................................................22

POINT VI

The Complaint Filed By Plaintiff Gene Smith Should Not
Be Dismissed................................................................................................23


CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Adickes v. S. H. Kress & Co.,**
398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)............................................. 13

Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520 (2d Cir. 1992)................................................................................................. 2

**Annis v. County of Westchester,**
136 F.3d 239 (2d Cir. 1998).................................................................................. 18, 19

**Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,**
403 U.S. 388, 91 S. Ct. 1999 , 29 L. Ed. 2d 619 (1971)................................... 17, 18

Bryant v. Maffucci,
923 F.2d 979 (2d Cir. 1991).............................................................................................. 2

Bryant v. Maffucci,
923 F.2d 979, (2d Cir. 1991)............................................................................................ 2

**Carey v. Piphus,**
435 U.S. 247, 98 S. Ct. 1042 , 55 L. Ed. 2d 252 (1978)................................. 17, 18

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................... passim

**City of Monterey v. Del Monte Dunes at Monterey, Ltd.,**
526 U.S. 687 , 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) ........................... 19

**City of Newport v. Fact Concerts, Inc.,**
453 U.S. 247, 101 S. Ct. 2748 , 69 L. Ed. 2d 616 (1981) ............................... 17

**Curley v. Vill. of Suffern,**
268 F.3d 65 (2d Cir. 2001) .......................................................................................... 10

**Dejesus v. Vill. of Pelham Manor,**
282 F. Supp. 2d 162 (S.D.N.Y. 2003) ........................................................................ 18

**Diesel v. Town of Lewisboro,**
232 F.3d 92 (2d Cir. 2000) ............................................................................................ 6

Elrod v. Burns,
427 U.S. 347 , 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).............................. 4, 16

**Gertz v. Robert Welch, Inc.,**
418 U.S. 323, 94 S. Ct. 2997 , 41 L. Ed. 2d 789 (1974)................................... 18

**Hague v. Comm. for Indus. Org.,**
307 U.S. 496, 59 S. Ct. 954, 83 L. Ed. 1423 (1939) ................................... 4, 6

**Harlen Associates v. Inc. Vill. of Mineola,**
273 F.3d 494 (2d Cir. 2001) ................................................................................ 6, 11

**Harris v. McRae,**
448 U.S. 297 , 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980) ........................... 6, 11

**Humphrey v. County of Nassau,**
06-CV-3682(JFB)(AKT), 2009 WL 875534 (E.D.N.Y. Mar. 30, 2009)........... 7, 12

**King v. Macri,**
993 F.2d 294 (2d Cir. 1993) ........................................................................................ 20

**Lovell v. City of Griffin, Ga.,**
303 U.S. 444 , 58 S. Ct. 666, 82 L. Ed. 949 (1938)................................. 3, 4, 6, 21

**Lovell v. Comsewogue Sch. Dist.,**
   **214 F. Supp. 2d 319 (E.D.N.Y. 2002)** ............................................ 6, 12

**Marsh v. State of Ala.,**
   **326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946)** ............................ 4, 6

**Memphis Cmty. Sch. Dist. v. Stachura,**
   **477 U.S. 299 , 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)** ...................... 17

**Monroe v. Pape,**
   **365 U.S. 167, 81 S. Ct. 473 , 5 L. Ed. 2d 492 (1961)** ......................... 17

Morrison v. Johnson,
   429 F.3d 48 (2d Cir. 2005) ......................................................... 9

**Murdock v. Com. of Pennsylvania,**
   **319 U.S. 105, 63 S. Ct. 870, 87 L. Ed. 1292 (1943)** ......................... 4, 6

Nye v. Mut. Ben. Life Ins. Co.,
   3 F.R.D. 308 (E.D.N.Y. 1943) ....................................................... 3

Petrario v. Cutler,
   187 F. Supp. 2d 26 (D. Conn. 2002) ................................................. 2

Puckett v. City of Glen Cove,
   631 F. Supp. 2d 226 (E.D.N.Y. 2009) ............................................... 8

**Robinson v. Cattaraugus County,**
   **147 F.3d 153 (2d Cir. 1998)** ................................................. 20, 22

**Schneider v. State of New Jersey, Town of Irvington,**
   **308 U.S. 147, 60 S. Ct. 146, 84 L. Ed. 155 (1939)** ......................... 4, 6

**Smith v. Wade,**
   **461 U.S. 30, 103 S. Ct. 1625 , 75 L. Ed. 2d 632 (1983)** .................. 17, 20

**Vincenty v. Bloomberg,**
   **476 F.3d 74 (2d Cir. 2007)** ...................................................... 5

Williams v. Town of Greenburgh,
   535 F.3d 71 (2d Cir. 2008) ...................................................... 8, 9

Statutes
42 U.S.C.A. § 1983 .......................................................... 17, 18, 20
U.S. Const. amend. I ................................................................ 3

Rules
Fed. R. Civ. P. 56(c) .............................................................. 2
Fed. R. Civ. P. 56(e) .......................................................... 13, 20

.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL GUEVARA, a minor, by his mother and best
friend, ELBA GUEVARA,

                        Plaintiff,

                -against-

PHILIP AMICONE, individually, EDMUND HARTNETT,
individually, CITY OF YONKERS, New York, POLICE
OFFICERS JOHN DOE # 1, individually, POLICE
OFFICERS JOHN DOE # 2, POLICE OFFICERS JOHN
DOE# 3, individually,

                        Defendants.
-------------------------------------------------------------------x

CONSOLIDATED
Case No. 07 Civ. 6941 (CS)


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT, ATTORNEYS FEES AND COSTS AND MOTION TO STRIKE AND/OR DISMISS THE COMPLAINT OF PLAINTIFF GENE SMITH


JONATHAN LOVETT, ESQ.
*Attorney for PlaintiffS*
By:  Amy L. Bellantoni (AB3061)
37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................i

PRELIMINARY STATEMENT.............................................................1

FACTUAL BACKGROUND................................................................1

SUMMARY JUDGMENT STANDARD..................................................2

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT.......................3

    POINT I

    Plaintiffs Are Entitled to Judgment as a Matter of Law on Their First
    Amendment Claims.................................................................3

    POINT II

    Plaintiffs Are Entitled to Judgment as a Matter of Law on Their
    Equal Protection Claims............................................................6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT..................................................................................8

    POINT I

    Plaintiffs Are Asserting a Violation of Their Rights as Guaranteed By the
    First Amendment; This is Not a First Amendment Retaliation Claim...............8

    POINT II

    Defendants Have Failed to Establish the Absence of Material Issues of
    Fact Regarding Plaintiffs' Equal Protection Claim.................................11

    POINT III

    Plaintiffs Have Suffered Compensatory Damages; Summary Judgment
    Should Be Denied............................ ....................................16

    POINT IV

    Defendants Have Failed to Demonstrate the Absence of Material Issues

**Lovell v. Comsewogue Sch. Dist.,**
  **214 F. Supp. 2d 319 (E.D.N.Y. 2002)** ......................................................... 6, 12

**Marsh v. State of Ala.,**
  **326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946)**......................................... 4, 6

**Memphis Cmty. Sch. Dist. v. Stachura,**
  **477 U.S. 299 , 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)** .................................. 17

**Monroe v. Pape,**
  **365 U.S. 167, 81 S. Ct. 473 , 5 L. Ed. 2d 492 (1961)**....................................... 17

Morrison v. Johnson,
  429 F.3d 48 (2d Cir. 2005)................................................................................. 9

**Murdock v. Com. of Pennsylvania,**
  **319 U.S. 105, 63 S. Ct. 870, 87 L. Ed. 1292 (1943)** ...................................... 4, 6

Nye v. Mut. Ben. Life Ins. Co.,
  3 F.R.D. 308 (E.D.N.Y. 1943)........................................................................... 3

Petrario v. Cutler,
  187 F. Supp. 2d 26 (D. Conn. 2002)................................................................. 2

Puckett v. City of Glen Cove,
  631 F. Supp. 2d 226 (E.D.N.Y. 2009) ............................................................. 8

**Robinson v. Cattaraugus County,**
  **147 F.3d 153 (2d Cir. 1998)** ..................................................................... 20, 22

**Schneider v. State of New Jersey, Town of Irvington,**
  **308 U.S. 147, 60 S. Ct. 146, 84 L. Ed. 155 (1939)**....................................... 4, 6

**Smith v. Wade,**
  **461 U.S. 30, 103 S. Ct. 1625 , 75 L. Ed. 2d 632 (1983)**.............................. 17, 20

**Vincenty v. Bloomberg,**
  **476 F.3d 74 (2d Cir. 2007)** ............................................................................ 5

Williams v. Town of Greenburgh,
  535 F.3d 71 (2d Cir. 2008)............................................................................ 8, 9

Statutes
**42 U.S.C.A. § 1983** ................................................................................ 17, 18, 20
**U.S. Const. amend. I** .......................................................................................... 3

Rules
Fed. R. Civ. P. 56(c) ........................................................................................... 2
**Fed. R. Civ. P. 56(e)** .................................................................................... 13, 20

of Fact Regarding Plaintiffs' Claims for Punitive Damages..........................20

POINT V

As Defendants Cannot Prevail in Their Summary Judgment Motion, Legal
Fees and Costs Should Be Denied...................................................22

POINT VI

The Complaint Filed By Plaintiff Gene Smith Should Not
Be Dismissed.....................................................................23

CONCLUSION.......................................................................23

# TABLE OF AUTHORITIES

Adickes v. S. H. Kress & Co.,
    398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)..........................13

Aldrich v. Randolph Cent. Sch. Dist.,
    963 F.2d 520 (2d Cir. 1992).............................................................2

Annis v. County of Westchester,
    136 F.3d 239 (2d Cir. 1998)........................................................18, 19

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
    403 U.S. 388, 91 S. Ct. 1999 , 29 L. Ed. 2d 619 (1971).......................17, 18

Bryant v. Maffucci,
    923 F.2d 979 (2d Cir. 1991)...............................................................2

Bryant v. Maffucci,
    923 F.2d 979,  (2d Cir. 1991)..............................................................2

Carey v. Piphus,
    435 U.S. 247, 98 S. Ct. 1042 , 55 L. Ed. 2d 252 (1978)........................17, 18

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..................... passim

City of Monterey v. Del Monte Dunes at Monterey, Ltd.,
    526 U.S. 687 , 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) .........................19

City of Newport v. Fact Concerts, Inc.,
    453 U.S. 247, 101 S. Ct. 2748 , 69 L. Ed. 2d 616 (1981) ..........................17

Curley v. Vill. of Suffern,
    268 F.3d 65 (2d Cir. 2001) ...............................................................10

Dejesus v. Vill. of Pelham Manor,
    282 F. Supp. 2d 162 (S.D.N.Y. 2003) ...................................................18

Diesel v. Town of Lewisboro,
    232 F.3d 92 (2d Cir. 2000) .................................................................6

Elrod v. Burns,
    427 U.S. 347 , 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).......................4, 16

Gertz v. Robert Welch, Inc.,
    418 U.S. 323, 94 S. Ct. 2997 , 41 L. Ed. 2d 789 (1974)............................18

Hague v. Comm. for Indus. Org.,
    307 U.S. 496, 59 S. Ct. 954, 83 L. Ed. 1423 (1939)..............................4, 6

Harlen Associates v. Inc. Vill. of Mineola,
    273 F.3d 494 (2d Cir. 2001) ...........................................................6, 11

Harris v. McRae,
    448 U.S. 297 , 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980) ......................6, 11

Humphrey v. County of Nassau,
    06-CV-3682(JFB)(AKT), 2009 WL 875534 (E.D.N.Y. Mar. 30, 2009)..............7, 12

King v. Macri,
    993 F.2d 294 (2d Cir. 1993) ..............................................................20

Lovell v. City of Griffin, Ga.,
    303 U.S. 444 , 58 S. Ct. 666, 82 L. Ed. 949 (1938)........................3, 4, 6, 21

i

## PRELIMINARY STATEMENT

Plaintiffs, who by their attorney, Jonathan Lovett, Esq. commenced this action in connection with violations of their constitutionally protected rights under the First Amendment, herein submit this Cross-Motion for Summary Judgment as to Liability, as well as Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

### Factual Background

Plaintiffs brought the instant action as a result of Defendants' violation of their constitutionally protected rights under the First Amendment to the United States Constitution.  Specifically, in and between July 2007 and August 2007, Defendants caused the Guardian Newspaper to be destroyed, confiscated and removed from the City of Yonkers.  Indeed, Defendants caused approximately 56 newspaper racks containing the Guardian Newspaper to be removed and confiscated from public property, and Defendants caused individuals (the Plaintiffs herein) who were handing out the Guardian Newspaper in public and on public property to be threatened with arrest, and/or bodily harm and given criminal summonses, and ordered to refrain from such constitutionally protected activity then and in the future.  Such action on the part of the Defendants was acted upon, in part, pursuant to Yonkers City Code § 100-35, which, as discussed in greater detail below, is unconstitutional on its face, as it violates the First Amendment to the United States Constitution. Moreover, Defendants' actions were directed solely at The Guardian newspaper and those hired to distribute same; no such action was taken against any other similarly situated newspapers or individuals. As a result of Defendants' actions, Plaintiffs' First Amendment and Fourteenth Amendment rights were violated and

they were made to suffer public embarrassment, public humiliation, anxiety, stress, fear, a chilling of their freedom of speech, emotional upset and shame, respectively.

Based on the following, Plaintiffs' cross-motion for summary judgment as to liability on their First and Fourteenth Amendment claims should, respectfully, be granted and Defendants' motion for summary judgment should, most respectfully, be denied in its entirety.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c) provides in pertinent part, "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Id.  Of course, a party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any", which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In ruling on a motion for summary judgment, the Court must resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Petrario v. Cutler, 187 F. Supp. 2d 26, 30 (D. Conn. 2002), *quoting*, Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Petrario, 187 F. Supp. 2d at 30, *quoting* Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

A summary judgment motion should only be granted in a case where there is a question of law to be decided or where there is no issue of fact to be tried. Nye v. Mut. Ben. Life Ins. Co., 3 F.R.D. 308 (E.D.N.Y. 1943).

A fair reading of the parties' Rule 56.1 statements, without more, demonstrates that the there are no contested factual issues with regard to liability in this matter on either the First or the Fourteenth Amendment claims: (1) Defendants enforced and acted pursuant to an unconstitutional statute that banned free speech and infringed upon the First Amendment to the Constitution; and (2) Defendants treated Plaintiffs' disparately from other similarly situated individuals while acting with a malicious and bad faith intent to injure them thus, violating Plaintiffs' right to equal protection. Indeed, the only contested factual issues, as will be discussed in greater detail in Plaintiffs' opposition to Defendants' motion for summary judgment, pertain to damages, which therefore presents a genuine issue of material fact that can only be determined by a trier of fact. Thus, it is respectfully requested that Plaintiffs' cross motion for summary judgment on the issue of liability for First and Fourteenth Amendment violations be granted and that Defendants' motion for summary judgment be denied in its entirety.

## PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

### POINT I
### PLAINTIFFS ARE ENTITLED TO JUDGMENT
### AS A MATTER OF LAW ON THEIR FIRST AMENDMENT CLAIMS

"Congress shall make no law . . .abridging the freedom of speech. . ." U.S. Const. amend. I. "Freedom of speech and the press . . .are among the fundamental personal rights which are protected. . .from invasion by state action." Lovell v. City of Griffin, Ga., 303 U.S. 444, 450, 58 S. Ct. 666, 82 L. Ed. 949 (1938). It is well-settled that

municipal ordinances adopted under state authority constitute state action. Id.    It is clear that the deprivation of constitutional rights causes irreparable harm. See, e.g., Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)("the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury"); 11A Charles A. Wright, Arthur R. Miller and Mary Kane, Federal Practice and Procedure, § 2948.1 at 161 (2d ed. 1995)("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

It is clear that the protection of the First Amendment encompasses *distribution* of material as well as publication; for publication without distribution is meaningless and something less than a full expression of ideas as contemplated by the Constitution. Lovell, 303 U.S. at 452 (emphasis added). "Neither the state nor a municipality can completely bar the distribution of literature containing religious *or political ideas* in its street, sidewalks, and public places or make the right to distribute dependent on a flat license tax *or permit* to be issued by an official who could deny it at will." Marsh v. State of Ala., 326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946)(*citing*, Lovell, 303 U.S. 444; Hague v. Comm. for Indus. Org., 307 U.S. 496, 59 S. Ct. 954, 83 L. Ed. 1423 (1939)(emphasis added); Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 60 S. Ct. 146, 84 L. Ed. 155 (1939); Murdock v. Com. of Pennsylvania, 319 U.S. 105, 63 S. Ct. 870, 87 L. Ed. 1292 (1943)).

"A ban on handbilling [ ]would suppress a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic congestion, or noise. . .[and thus] a complete ban on handbilling would be substantially

4

broader than necessary to achieve the interests of justifying it." <u>Vincenty v. Bloomberg</u>, 476 F.3d 74, 85 (2d Cir. 2007).

It is an uncontested fact that each and every Plaintiff named in the matter herein was issued a criminal summons in violation of Yonkers' unconstitutional City Code § 100-35 as they were distributing The Guardian newspaper in the City of Yonkers while on public property. (*see*, Defendants' 56.1 statement in support of Defendants' motion for summary judgment). Yonkers City Code § 100-35 provides,

"No person shall post any bill, placard, notice or other paper upon any structure, tree, rock, article or thing within any park or public place or paint or fix thereon in any way any advertisement, notice or exhortation, except under permit and in strict conformity therewith. *No person shall distribute, hand out or cast about any card, circular, pamphlet or printed matter within any park or upon any public place.*

(emphasis added). As there is no factual dispute, there remains only a question of law for determination by this Court on the issue of whether the statute is unconstitutional.

The Plaintiffs herein were distributing The Guardian Newspaper on public property, a <u>fundamental right</u> guaranteed to them by the First Amendment to the United States Constitution. Yonkers City Code §100-35 constitutes a **complete and unlawful ban of First Amendment protected activity**. The code specifically prohibits people from handing out the newspaper, or any literature for that matter, in public and on public property – "*No person shall distribute, hand out or cast about any card, circular, pamphlet or printed matter within any park or upon any public place.*" Yonkers City Code § 100-35.

There is no dispute between the parties that Plaintiffs were issued criminal summonses for handing out The Guardian newspaper on public property. Moreover, not only do Defendants fail to contest the fact that the last sentence of Yonkers City Code

§100-35 is blatantly unconstitutional and in obvious violation of the First Amendment, *there can be no credible argument to the contrary*. As the municipality has completely barred the distribution of literature containing *political ideas* in its street, sidewalks, and public places and/or has made the right to distribute dependent on a flat license tax or permit to be issued by an official who could deny it at will, Defendants have violated Plaintiffs' First Amendment rights." Marsh, 326 U.S. 501.[1] Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' cross-motion for summary judgment on the issue of liability for violating Plaintiffs' First Amendment rights.

### POINT II
### PLAINTIFFS ARE ENTITLED TO JUDGMENT
### AS A MATTER OF LAW ON THEIR EQUAL PROTECTION CLAIMS

The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from invidious discrimination in statutory classifications and other governmental activity. Harris v. McRae, 448 U.S. 297, 322, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980). The Equal Protection Clause requires that the government treat all similarly situated people alike. Harlen Associates v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Thus, an equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 321-22 (E.D.N.Y. 2002) (*citing*, Diesel v. Town of Lewisboro, 232 F.3d

---

[1] *Citing*, Lovell, 303 U.S. 444; Hague, 307 U.S. 496(emphasis added); Schneider, 308 U.S. 147; Murdock, 319 U.S. 105).

92, 103 (2d Cir. 2000)); *see*, Humphrey v. County of Nassau, 06-CV-3682(JFB)(AKT),

2009 WL 875534 (E.D.N.Y. Mar. 30, 2009).

It is an uncontested fact that the only news publication that was targeted by the

Defendants was The Guardian newspaper. Indeed, Selim Zherka testified at his

deposition that **he observed** that the only news racks that were singled out, taken and

destroyed were those belonging to The Guardian – no other newspaper rack was

disturbed. (Bellantoni Dec., Ex. 2 at 76:25-78:6).

"I don't know if it was the same date, but there was a date on which he was
handing out newspapers on Yonkers Avenue and Central Avenue, and we had just
replaced newsracks that were unlawfully confiscated by the City of Yonkers and while he
was out there, a DPW, white DPW truck pulled up, and by that time we hadn't had it
confirmed whether Yonkers was unlawfully confiscating them because they denied to me
on the phone that they had taken them.

And he was out there just handing out newspapers we had placed the newsrack on
that corner and a newsrack in front of the diner, which is the Raceway Diner, and the
DPW truck came by and took the one in front of the Diner, and it pulled up in front of
Kllapija. And two males got out and they clipped off the chain where the news rack was,
**they didn't confiscate any other news rack, and I believe there's four – three to five
other news racks there, and ours was in the middle, and they clipped off the chain**
and Kllapija took photos of other **DPW workers coming off the truck and singling out
the Westchester Guardian newsracks.**" Id. (emphasis added).

Likewise, Hatixha Zherka also testified that that Defendants did not, in fact, treat

other newspapers in the same manner that they treated Plaintiffs. Zherka testified, "Why

didn't [the Defendants] take the Daily News boxes?  Why didn't they take the Journal

News boxes?  Why didn't they take the New York Post boxes?  But they took the

Westchester Guardian boxes." Bellantoni Dec., Ex. 11 at 24:24-25:6.

The Defendants herein were motivated by a malicious and bad faith intent to

injure the Plaintiffs because Plaintiffs were distributing The Guardian newspaper, against

which Defendants had embarked on a wholesale campaign to destroy, suppress and

remove from the City of Yonkers, which included preventing Plaintiffs from handing out The Guardian to the public. Indeed, there are no <u>facts</u> in the record to dispute Plaintiffs' position that they were the only individuals who were issued criminal summonses and prevented from handbilling.

Defendants cannot point to <u>any</u> facts in the record that would demonstrate there is no triable issue of fact with respect to Plaintiffs' Equal Protection claim. That is, counsel has not provided or referenced any deposition testimony, declaration, affirmation or the like that demonstrates that the Defendants <u>treated others in the same manner</u> that they treated the Plaintiffs herein. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' cross-motion for summary judgment on the issue of liability for violating Plaintiffs' Fourteenth Amendment right to equal protection.

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

### <u>POINT I</u>
### <u>PLAINTIFFS ARE ASSERTING A VIOLATION OF THEIR RIGHTS AS GUARANTEED BY THE FIRST AMENDENT; THIS IS NOT A FIRST AMENDMENT RETALIATION CLAIM</u>

Defendants wrongfully assert that Plaintiffs cannot prevail because they[2] cannot show that their actions were "chilled" as a result of Defendants' conduct. In furtherance of their argument, Defendants cite the standard for First Amendment *retaliation.*[3]

---

[2] In the first instance, it should be noted that Defendants refer to Plaintiffs in the plural, but as a singular unit when it comes to damages. Each Plaintiff herein suffered a similar constitutional violation, however, questions of fact exist as to the damages suffered by each individual Plaintiff as a result of Defendants' unconstitutional acts.

[3] It must also be noted that the standard cited by defense counsel is misleading, in the as this Court is well aware, "chilling" is not a required element in a First Amendment retaliation claim. Indeed, the Second Circuit has explained that the elements required to plead a First Amendment retaliation claim depend upon the factual context; chilling is required to be alleged *only in cases where a plaintiff states no harm independent of the chilling of speech.* <u>Puckett v. City of Glen Cove</u>, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009)(citing, <u>Williams v. Town of Greenburgh</u>, 535 F.3d 71 (2d Cir. 2008)(emphasis added) – as this Court

However, Plaintiffs are not asserting a traditional First Amendment *retaliation* claim. Plaintiffs are asserting, as stated plainly in the Complaint, a pure violation of the First Amendment – that is, that the Defendants violated their First Amendment rights in the first instance; not that Defendants *retaliated* against them at some later time for expressing their First Amendment rights on a prior occasion.

Plaintiffs herein were issued criminal summonses and threatened with arrest, and in some instances bodily harm, for engaging in a fundamentally protected right as guaranteed by the First Amendment -- handing out newspapers on public property -- in violation of an unconstitutional Yonkers City ordinance.   The treatment Plaintiffs received at the hands of Defendants and the issuance of the criminal summonses to Plaintiffs for engaging in constitutionally protected activity violated the Plaintiffs' First Amendment rights.   This case is dissimilar to the First Amendment employment retaliation cases wherein a plaintiff exercised his/her First Amendment rights and was later retaliated against by a defendant whose actions were motivated or substantially caused by the employee's exercise of that right.

By enforcing a statute that constituted a complete and unconstitutional ban of the First Amendment, Defendants knew and/or should have known that the statute was unconstitutional and in violation of Plaintiffs' <u>fundamental</u> First Amendment rights. Defendants' actions constituted a <u>prior restraint</u>, not a subsequent retaliation brought about by a prior act protected by the First Amendment.   As such, "chilling" is not a required element of the pure First Amendment violation claims asserted herein – the

---

itself has instructed Mr. Belowich in open court recently in the matter of <u>Zherka v. Amicone</u>, 07 Civ. 9618. Indeed, where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion (or the destruction of innumerable newspapers and news racks for example) an allegation as to a chilling effect is not necessary to state a claim. <u>Id.</u> . (citing <u>Morrison v. Johnson</u>, 429 F.3d 48, 51 (2d Cir. 2005)(statements in parentheses added).

Plaintiffs' rights were violated in the first instance, contemporaneously with the fundamental right being expressed. Moreover, the "chilling" referred to in Plaintiffs' Complaint pertains to the <u>damages</u> portion of the claims, not the facts in support of their causes of action, although certain Plaintiffs *were* actually chilled in that they never gain handed out The Guardian newspaper.

In the case cited by Defendants, <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65 (2d Cir. 2001) the plaintiff therein ran for the office of mayor in 1993 in the Village of Suffern, New York. During the campaign, Plaintiff accused his opponent, who also served as the village police chief, of corruption. In 1994, Plaintiff was arrested in connection with a barroom brawl, but nonetheless alleged that his arrest was in retaliation for his political speech in 1993. Finally, the plaintiff in <u>Curley</u> alleged that he was chilled in his speech as a result of the arrest; however, he continued his bid for public office in 1994 by running for village trustee and again in 1995. In <u>Curley</u>, markedly different acts, separate and apart from the speech, took place as the retaliation alleged therein and, as such, allegedly chilled the plaintiff and prevented him from doing that which he did in the first instance.

In the case at bar, when the officers approached Plaintiffs, gave them summonses and threatened to arrest them and/or confiscated their newspapers ordering them to cease and desist from disseminating the same, each separate act caused an injury to the Plaintiffs. Indeed, with respect to some Plaintiffs, after an officer approached them once, said Plaintiffs never again handed out the newspaper – they were chilled in the exercise of their First Amendment freedoms. In other cases, the trauma of police conduct the second time around effectively chilled their behavior from thereon; and in some cases, Plaintiffs' behavior may not, in fact, have been chilled. Such chilling notwithstanding,

Plaintiffs herein are merely alleging chilling as one of the many *damages* that each Plaintiff suffered.

While not every Plaintiff may have been "chilled", every Plaintiff testified to some quantum of damages – anxiety, fear, humiliation, embarrassment, and the like, as a result of Defendants' actions. These <u>facts</u> are set forth in the record and Exhibits before this Court. In order to defeat the within motion, Plaintiffs need only demonstrate the existence of <u>facts</u> that require resolution by a fact finder – Plaintiffs need not produce <u>evidence</u> of the injuries at this stage. <u>Celotex Corp.</u>, 477 U.S. 317. Plaintiffs need demonstrate only that a <u>factual</u> issue exists with respect to said damages and injuries.

Accordingly, it is respectfully requested that the Court deny Defendants' motion for summary judgment on Plaintiffs' First Amendment claim.

## POINT II
## DEFENDANTS HAVE FAILED TO ESTABLISH
## THE ABSENCE OF MATERIAL ISSUES OF FACT REGARDING
## PLAINTIFFS' EQUAL PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from invidious discrimination in statutory classifications and other governmental activity. <u>Harris</u>, 448 U.S. at 322. The Equal Protection Clause requires that the government treat all similarly situated people alike. <u>Harlen Associates</u>, 273 F.3d. at 499. Thus, an equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad

faith intent to injure the person. <u>Lovell</u>, 214 F. Supp. 2d. at 321-22 (*citing*, <u>Diesel</u>, 232 F.3d. 103); *see*, <u>Humphrey</u>, 2009 WL 875534.

In Defendants' Memorandum of Law, they assert, "Plaintiffs do not allege that they were treated differently from anyone in any material aspect". However, Counsel, in fact, then goes on to quote the Plaintiffs' Complaint as in fact stating, ". . .Defendants repeatedly and daily targeted employees of The Guardian News, Inc. . .threatened them with arrest, and charged them criminally—with the same motivation and the objective of entirely stopping dissemination of The Guardian in and about City Hall and the City because of its substantive content. . ." and ". . .**by way of contrast,** persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals (a) in the stairway [in City Hall] and (b) on the security desk counter [in] City Hall as manned by a uniformed Police Officer." (Defendants' Memorandum of Law at p. 7-8) (emphasis added).

Incredibly, Defendants quote from Plaintiffs' Complaint *the very language they assert does not exist in the Complaint* – that Plaintiffs were treated differently than others who distributed newspapers and periodicals.

Not only do Plaintiffs state in a plain and concise fashion that they were treated differently than others, they provide a specific example – an amplified statement -- as to how they were treated differently than other individuals distributing newspapers and literature.  Specifically, newspapers that published articles that were favorable to Mayor Amicone remained undisturbed in their news racks, while the news racks of The Guardian newspapers were removed and destroyed.

Incredibly, knowing that such factual information regarding malicious disparate treatment of Plaintiffs is contained in the Complaint, Defendants have wholly failed to provide any proof that Plaintiffs <u>were not</u> treated differently than others similarly situated. Indeed, Defendants could simply have provided a declaration from Mayor Amicone stating that the City and/or the Yonkers Police Officers routinely destroyed other newspaper racks or issued criminal summonses to those handing out the Journal News, political palm cards and/or the pocket version of the Gideon's Bible. Such a declaration, though, is conspicuously absent from Defendants' motion papers.

The party moving for summary judgment has the burden of showing the absence of genuine issues as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Only if the moving party meets its burden does Fed. R. Civ. P. 56(e) require the nonmoving party to go beyond the pleadings and by his/her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 324.

Concededly, reference to the Complaint would not be enough for Plaintiffs to rebut a prima facie case of entitlement to summary judgment, had Defendants made out such a prima facie case. However, since Defendants have failed to make out a prima facie case of entitlement, Plaintiffs reference the Complaint simply to demonstrate to the Court that Plaintiffs' claims were properly plead.

On the other hand, Defendants have completely failed to meet their burden of establishing a prima facie case of entitlement to summary judgment on the Equal

Protection claim.  Indeed, Defendants fail to point to <u>any</u> facts developed during the discovery process (or in their 56.1 statement) that would demonstrate there are no triable issue of fact with respect to Plaintiffs' Equal Protection claim.  That is, counsel has not pointed to any deposition testimony, declaration, affirmation or the like that demonstrates on its face, or creates a prima facie case for summary judgment purposes, that the Defendants <u>treated others in the same manner</u> that they treated the Plaintiffs herein.[4]

When, and only when, Defendants meet their burden and, thus, point to a fact in the record that would tend to demonstrate they treated others in the same manner that they treated Plaintiffs does the burden then shift to the Plaintiffs to identify facts that exist in the record to date, that would establish that the Plaintiffs were, in fact, treated differently from others similarly situated. <u>Celotex Corp.</u>, 477 U.S. at 324.

Indeed, defense counsel has not even alleged that others similarly situated were treated in the same manner as the Plaintiffs, that is, that other newspapers had their news racks destroyed that those distributing said publications were issued criminal summonses for distributing said newspaper or other literature. *Defendants have the burden to produce*, yet defense counsel is still complaining about what he alleges that *Plaintiffs* have not produced.  It is axiomatic that one does not gain judgment as a matter of law by referencing what the other side does not have; rather, counsel has the burden of demonstrating what he has that creates a prima facie case of entitlement.  Then, and only then, would the burden shift to the Plaintiffs.  This issue could have been explored in detail during discovery, however, Defendants not only failed to develop the subject,

---

[4] Indeed, testimony from Hatixha Zherka shows that Defendants did not, in fact, treat other newspapers in the same manner that they treated Plaintiffs. Zherka testified, "Why didn't [the Defendants] take the Daily News boxes?  Why didn't they take the Journal News boxes?  Why didn't they take the New York Post boxes?  But they took the Westchester Guardian boxes." Bellantoni Dec., Ex. 11 at 24:24-25:6.

Defendants did not even address the issue.   Notwithstanding defense counsel's access to the Mayor, the Chief of Police, and the Yonkers Department of Public Works, there has been no declaration or affidavit affirming that the City treated others in the same manner that it has treated The Guardian, its employees, or those who handed out the newspaper.[5]

Notwithstanding the fact that Defendants have failed to meet their burden, Plaintiffs have presented uncontested facts demonstrating that Plaintiffs were treated disparately from other similarly situated individuals and that Defendants were motivated by a malicious and bad faith intent to injure the Plaintiffs solely because Plaintiffs were distributing The Guardian newspaper, against which Defendants had embarked on a wholesale campaign to destroy, suppress and remove from the City of Yonkers.

As discussed above, Selim Zherka testified at his deposition that **he observed** that the only news racks that were singled out, taken and destroyed were those belonging to The Guardian – no other newspaper rack was disturbed. (Bellantoni Dec., Ex. 2 at 76:25-78:6).

"I don't know if it was the same date, but there was a date on which he was handing out newspapers on Yonkers Avenue and Central Avenue, and we had just replaced newsracks that were unlawfully confiscated by the City of Yonkers and while he was out there, a DPW, white DPW truck pulled up, and by that time we hadn't had it confirmed whether Yonkers was unlawfully confiscating them because they denied to me on the phone that they had taken them.

And he was out there just handing out newspapers we had placed the newsrack on that corner and a newsrack in front of the diner, which is the Raceway Diner, and the DPW truck came by and took the one in front of the Diner, and it pulled up in front of Kllapija. And two males got out and they clipped off the chain where the news rack was, **they didn't confiscate any other news rack, and I believe there's four – three to five other news racks there, and ours was in the middle, and they clipped off the chain**

---

[5] For Defendants to bring one forward now would be improper, but welcomed, as it would be interesting to see who would affirm under the penalty of perjury that others similarly situated were treated the same as the Plaintiffs herein.

and Kllapija took photos of other **DPW workers coming off the truck and singling out the Westchester Guardian newsracks.**" <u>Id.</u> (emphasis added).

Likewise, Hatixha Zherka testified that Defendants did not, in fact, treat other newspapers in the same manner that they treated The Guardian. Zherka testified, "Why didn't [the Defendants] take the Daily News boxes?  Why didn't they take the Journal News boxes?  Why didn't they take the New York Post boxes?  But they took the Westchester Guardian boxes." Bellantoni Dec., Ex. 11 at 24:24-25:6.

The Defendants herein were motivated by a malicious and bad faith intent to injure the Plaintiffs solely because Plaintiffs were distributing *The Guardian* newspaper, against which Defendants had embarked on a wholesale campaign to destroy, suppress and remove from the City of Yonkers, which included preventing Plaintiffs from handing out The Guardian to the public.  Indeed, there are no <u>facts</u> in the record to dispute Plaintiffs' position that they were the only individuals who were issued criminal summonses and prevented from handbilling.  Based on the aforementioned, it is respectfully requested that Defendants' motion for summary judgment be denied.

## POINT III
## PLAINTIFFS HAVE SUFFERED COMPENSATORY DAMAGES; SUMMARY JUDGMENT SHOULD BE DENIED

It is clear that the deprivation of constitutional rights causes irreparable harm. *See, e.g.,* <u>Elrod</u>, 427 U.S. at 373("the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury"; 11A Charles A. Wright, Arthur R. Miller and Mary Kane, <u>Federal Practice and Procedure, § 2948.1</u> at 161 (2d ed. 1995)("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

42 U.S.C.A. § 1983 creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)(internal quotations omitted)(*citing,* Carey v. Piphus, 435 U.S. 247, 253, 98 S. Ct. 1042, 1047, 55 L. Ed. 2d 252 (1978). *See also,* Smith v. Wade, 461 U.S. 30, 34, 103 S. Ct. 1625, 1628, 75 L. Ed. 2d 632 (1983); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258-259, 101 S. Ct. 2748, 2755-2756, 69 L. Ed. 2d 616 (1981).

Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts. Id. *See,* Smith, 461 U.S. at 34; Carey, 435 U.S. at 257-258; *cf.* Monroe v. Pape, 365 U.S. 167, 196, 81 S. Ct. 473, 488, 5 L. Ed. 2d 492 (1961) overruled by Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (Harlan, J., concurring).

Section 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983.

Punitive damages aside, damages in tort cases are designed to provide compensation for the injury caused to a plaintiff by a defendant's breach of a duty. Id. (*citing,* Harper, F. James, & O. Gray, Law of Torts § 25.1, p. 490 (2d ed. 1986) (emphasis in original), quoted in Carey, 435 U.S. at 255; *See also,* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395, 397, 91 S. Ct.

1999, 2004, 2005, 29 L. Ed. 2d 619 (1971); Bivens, 91 S. Ct. at 2010-2011 (Harlan, J., concurring in judgment). To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering. Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. 2d 789 (1974). *See also,* Carey, 435 U.S. at 264 (mental and emotional distress constitute compensable injury in § 1983 cases).

Consequently, "the basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." Carey, 435 U.S. at 254 (emphasis added). See also Carey, 435 U.S. 247 ("damages awards under § 1983 should be governed by the principle of compensation").

Defense counsel's representation of the holding in Dejesus v. Vill. of Pelham Manor, 282 F. Supp. 2d 162 (S.D.N.Y. 2003) wherein he quotes DeJesus citing Annis v. County of Westchester, 136 F.3d 239 (2d Cir. 1998) that "mere subjective statements by a plaintiff concerning feelings of anguish or humiliation, without any physical effects of such distress or corroborating evidence or other supporting evidence, are insufficient" is a misrepresentation of the law and distortion of the holding in that case. (Defendants MOL at p. 9). Indeed, the court in DeJesus recognized the narrow holding in Annis, which the Annis court itself limited, based on the nature of *that plaintiff's* testimony, and not as a result of any absence of corroboration. Id. at 178. The court in DeJesus, however, did note that the law is clear that absent a finding that plaintiffs can produce no evidence to substantiate their claims for emotional distress, the *existence of mental anguish damages is a matter of fact to be determined by a jury;* consequently the DeJesus court *did not*

grant summary judgment for the defendants; the DeJesus plaintiffs were allowed to present evidence of their emotional distress at trial. Id. (citing, City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 708-11, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999)(emphasis added), as the Plaintiffs herein should be allowed to do.

As discussed in the previous section, Defendants once again ironically point to the information provided by the Plaintiffs, here their deposition testimony, which demonstrates that they _were_ damaged, in support of their argument that Plaintiffs have _no_ damages. Once again, it is Defendants' burden to show the absence of any material issues of fact, yet they have failed to meet their burden.

Defense counsel asserts that "Plaintiffs have failed to come forth with any evidence that they experienced 'concrete emotional problems'" (Defendants' Memorandum of Law at p. 9). Elsewhere, counsel alleges that Plaintiffs have failed to provide evidence of damages because there are no _documents_ that show the same. However, as any first year law student knows, testimony is evidence. As discussed in Plaintiffs' 56.1 Statement, Plaintiffs, respectively, testified during their depositions that they experienced nausea, were scared, felt like throwing up, were made to feel like criminals, were embarrassed, threatened and damaged emotionally. As such, Plaintiffs should be allowed to present their individual evidence of their emotional distress to a jury at trial.[6] Accordingly, Defendants' motion for summary judgment should be denied.

---

[6] It is not for counsel to decide what does and does not constitute an injury, but for a jury.

**POINT IV**
**DEFENDANTS HAVE FAILED TO DEMONSTRATE**
**THE ABSENCE OF MATERIAL ISSUES OF FACT REGARDING**
**PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES**

A jury may be permitted to assess punitive damages in an action under 42 U.S.C.A. § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Smith, 461 U.S. 30 U.S. (1983).

Moreover, in §1983 actions, punitive damages may be awarded in the absence of a compensatory award.   Robinson v. Cattaraugus County, 147 F.3d 153 (2d Cir. 1998)(citing, King v. Macri, 993 F.2d 294, 298 (2d Cir. 1993)).

In actions such as the case at bar, a court must instruct the jury that if it finds that a constitutional violation occurred, the jury must award at least nominal damages; failure to so instruct is plain error. Robinson, 147 F.3d at 162 (emphasis added).

As discussed above, Defendants have failed to come forward with any factual basis demonstrating the absence of material issues of fact for a jury; they simply state that Plaintiffs have failed to establish that Defendants' conduct was "motivated by evil motive or intent".[7]  However, if the standard were as defense counsel posits it, there would be no courtroom trials—every case would be resolved by a "trial on paper." *Evidence* is not necessary to survive summary judgment, only the existence of facts requiring resolution by a finder of fact. Indeed, Fed. R. Civ. P. 56(e)'s requirement that a nonmoving party designate specific **facts** showing that there is a genuine issue for trial in order to defeat a

---

[7] Once again, Defendants' arguments are aimed at a lack of evidence rather than the non-existence of facts that warrant resolution by trial. Plaintiffs have demonstrated the existence of facts warranting a trial on the issue of damages and will provide their evidence at said trial. *See*, Celotex Corp., 477 U.S. 317  If Plaintiffs were required to proffer evidence at this stage, summary judgment would be relegated to trials on paper, however, that is not the purpose of summary judgment.

moving party's entitlement to judgment, does not mean that the nonmoving party must produce **evidence** in a form that would be admissible at trial in order to avoid summary judgment. Celotex Corp., 477 U.S. 317.

Counsel's own arguments point to the idea that there exist triable issues of fact. Defendants cannot "find that there are no facts" or play fact finder and advocate.

It is uncontroverted that the City of Yonkers engaged in a wholesale destruction of a newspaper by destroying over 56 newspaper racks containing The Westchester Guardian newspaper. Indeed, the City of Yonkers is presently and permanently enjoined from disturbing those racks. As a result of Defendants' wholesale destruction and/or removal of The Guardian Newspaper racks, the newspaper was forced recruit people to hand out the paper. In their efforts to disseminate the information that was suppressed by the Defendants in the first instance, these Plaintiffs were in turn approached, detained, suffered Fourth Amendment violations (although unplead), and were damaged by being denied the right to hand out the newspaper, and in other ways as discussed above.

Liberty of circulation is as important to freedom of the press as liberty of the publication; indeed, without the circulation, the publication would be of little value. Lovell, 303 U.S. at 452.

Defendants' destruction and suppression of The Westchester Guardian was based upon the unfavorable, critical and negative articles written about the Mayor, Defendant Amicone. Thus, Defendants' actions in issuing criminal summonses and threatening Plaintiffs herein (and no other individuals handbilling in Yonkers) with arrest and/or bodily harm were motivated by malicious and bad faith intentions. Furthermore, First Amendment rights are so fundamental and basic that each and every Defendant knew

and/or should have known that their actions violated the Plaintiffs' constitutionally protected rights, yet Defendants acted recklessly and with callous indifference to those fundamental constitutional rights. As the issue of damages is a question of fact for the jury's determination, Defendants' motion for summary judgment should, respectfully, be denied.

**POINT V**
**AS DEFENDANTS CANNOT PREVAIL IN THEIR**
**SUMMARY JUDGMENT MOTION,**
**LEGAL FEES AND COSTS SHOULD BE DENIED**

Based on the foregoing, Plaintiffs' motion for summary judgment on the issue of liability should, respectfully, be granted. Moreover, the issue of damages, as previously discussed, is a matter that should be left for determination by a trier of fact. Thus, as Defendants are not "prevailing parties", they are not entitled to attorneys' fees or costs. Should the Court, for some reason, grant summary judgment on a limited issue regarding damages, Defendants are still not "prevailing parties" (1) as the issue of liability has not been determined in their favor; and (2) where the Court or a jury finds that a constitutional violation has occurred, the jury must be instructed that they must award at least nominal damages; failure to so instruct is plain error. Robinson, 147 F.3d at 162; and (3) punitive damages may be awarded for a constitutional violation as well which, in this matter, will most assuredly be granted as it is clear that Defendants were motivated by malicious and bad intent. Accordingly, Defendants are not entitled to attorneys' fees or costs.

## POINT VI
## THE COMPLAINT FILED BY PLAINTIFF
## GENE SMITH SHOULD NOT BE DISMISSED

Defendants motion to dismiss or strike the Complaint filed by Plaintiff Gene Smith should be denied in its entirety as Defendants have been on notice since September 25, 2009 that Smith has been available to be deposed. While it is true that Mr. Smith was in a car accident and at some point incapacitated, as of September 25, 2009, Plaintiff Smith was available to the Defendants to be examined before trial. Indeed, Mr. Lovett sent a letter to this Court advising that Plaintiff Smith was "capable of both responding to Defendants' interrogatories and being deposed." (A copy of Mr. Lovett's letter is annexed to the Bellantoni Dec. as Ex. 12). Defendants were then under an obligation to set a date for Smith's deposition and notice said deposition, if they had so desired. Defense counsel contends that his October 7, 2009 e-mail requesting dates to depose Plaintiff Smith was adequate to fulfill his responsibility to notice Smith's deposition. To the contrary — once Mr. Lovett informed defense counsel that Plaintiff Smith was available, it was up to defense counsel to notice the date of the deposition. Indeed, as counsel was well aware, Plaintiff Smith was *in a nursing home* —any date would have been "fine" for him. As Plaintiff Smith has been available to be deposed since September 25, 2009, defense counsel should not benefit from his failure to simply notice the date for the deposition. Accordingly, Plaintiff Smith's complaint should not be stricken, rather, Defendants' right to depose Smith should be deemed waived.

## Conclusion

Based on the foregoing, it is respectfully requested that this Court (1) grant Plaintiffs' cross-motion for summary judgment on the issue of liability for Defendants'

violation of Plaintiffs' First and Fourteenth Amendment rights; (2) deny Defendants' motion for summary judgment in its entirety; (3) deny Defendants' motion for attorneys' fees and costs; and (4) deny Defendants' motion to dismiss Plaintiff Gene Smith's complaint.

Dated: Hawthorne, New York
      December 10, 2009

JONATHAN LOVETT
*Attorney for Plaintiffs*

By: _____
Amy L. Bellantoni (AB3061)
*Of Counsel*
37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500
(914) 347-4545

To:    Brian Belowich, Esq.
      DELBELLO DONNELLAN
      WEINGARTEN WISE & WIEDERKEHR
      1 North Lexington Avenue
      White Plains, New York 10601
      (914) 681-0200
      Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

RICHARD BLASSBERG,

                                   Plaintiff,

      -against-                                  **08 Civ 1506 (CS)**

PHILIP AMICONE, et al.,

                                  Defendants.

                                                    **AFFIDAVIT OF SERVICE**

PHILIP AMICONE,

                                 Third Party Plaintiff,

      -against-

THE GUARDIAN NEWS, INC. and SELIM ZHERKA,

                                 Third Party Defendants.

------------------------------------------------------------------x

      Alba Monge, being duly sworn says, I am not a party to the action, am over 18 years of age

and reside at Mt. Vernon, New York.

      On December 11, 2009, I served a true copy of the annexed **PLAINTIFF'S
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR
SUMMARY JUDGMENT ON LIABILITY AND IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGMENT, ATTORNEYS FEES AND COSTS AND
MOTION TO STRIKE AND/OR DISMISS THE COMPAINT OF PLAINTIFF GENE
SMITH,** in the above captioned matter by mailing the same in a sealed envelope, with postage
prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State
of New York, addressed to the last known address of the addressee(s) as indicated below:

TO:   Brian Belowich, Esq.
       DelBello Donnellan Weingarten
       One North Lexington Avenue
       White Plains, New York 10601

                                                      Alba Monge

Sworn to before me this
11th day of December, 2009

Notary Public

DRITA NICAJ
Notary Public, State of New York
No. 02NI6000376
Qualified in Putnam County
Commission Expires 12/15/20 09