UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MICHAEL GUEVARA, a minor, by his
Mother and best friend, ELBA GUEVARA,
*et. al,*

              Plaintiffs,

    -against-

PHILIP AMICONE, *et. al,*

              Defendants.
-------------------------------------------------------x
VIOLETA DZIKOVIC, *et. al,*

              Plaintiffs,

    -against-

PHILIP AMICONE, *et. al,*

              Defendants.
-------------------------------------------------------x
RICHARD BLASSBERG,

              Plaintiff,

    -against-

PHILIP AMICONE,

              Defendant.
-------------------------------------------------------x

07 Civ. 6941 (CS)

**PLAINTIFFS' PROPOSED
JURY INSTRUCTIONS**

07 Civ. 7692 (CS)

08 Civ. 1506 (CS)

      Plaintiffs, by their attorneys Lovett & Bellantoni, LLP submit the following proposed

jury instructions subject to a reservation of rights to amend same as justice may require.

Dated: Hawthorne, N.Y.
      September 17, 2010

                    LOVETT & BELLANTONI, LLP
                    Attorneys for Plaintiffs
                    By:_____
                        Jonathan Lovett (4854)
                    37A Saw Mill River Road
                    Hawthorne, N.Y. 10532
                    914-347-4500

## AS TO PLAINTIFFS' CLAIMS

**Plaintiff's Instruction #1**

In this case, as you are aware, there are three different groups of Plaintiffs.

Richard Blassberg, who at the time of the events at issue was the Editor in Chief of The Westchester Guardian, claims that his rights under the First and Fourteenth Amendments to the United States Constitution were violated by Philip Amicone and the City of Yonkers. In short he claims that his right to free speech was violated by the Defendants as a result of their confiscation of the copies of The Guardian News, the issuance of criminal charges against individuals handing out copies of the newspaper, their threats to arrest those handing out copies, and their confiscation of its newsracks. He also claims that because no other similar publication was subjected to that confiscation and/or threats he was denied his right to equal protection on the premise that the confiscation, issuance of criminal summonses and threats were content based - - that is, those actions were motivated at least in part by an intention to suppress The Westchester Guardian because of its content and/or Mr. Blassberg's  ideas, editorials and/or thoughts as contained in it.

The second group of Plaintiffs is comprised of Muamer Kllapija, Richard Guzman, Cesar Castillo, Domenica O'Neill, Maribel Ayala, Christian Salazar, Jason Gonzalez, **Pacheco ?,** and Michael Guevara. These individuals also claim that their free speech and equal protection rights were violated when they were prevented from and/or inhibited from distributing The Westchester Guardian (through confiscation of the newspapers, threats to arrest, issuance of criminal summonses pursuant to City Code Section 100-35, and threats of physical violence) both by reason of its content and by way of contrast with other distributers of other newspapers within the City of Yonkers.

The third group of Plaintiffs is comprised of Anton Lukaj, Derek Roberto, Gabriel Potente, Joni Campbell, Kujtim Zherka, Hatixha Zherka, Kenneth Heslop, Randa Sayegh, Robert Palermo, Violeta Dzikovic, Chanda Sookdeo, Dominick D'Intino, James Carey, Krishendaye Mrajh, Salvatore Potente, and Wendy Ram. These plaintiffs contend that their free speech and equal protection rights were violated by the Defendants' confiscation of The Guardian News because of its content - - as opposed to other similarly situated newspapers distributed within the City of Yonkers. Their contention, put differently, is that they were improperly denied access to The Guardian News in violation of their First Amendment right to see/read the newspaper and their right to Equal Protection.

**Plaintiff's Instruction #2**

Although there are three different groups of Plaintiffs, they all bring their claims under Title 42 of the United States Code.

Section 1983 of Title 42 of the United States Code provides that any citizen may seek redress in this court by way of damages against any person or persons who, while acting under color of any state law or custom, subjects that citizen to a deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

In order to prove these constitutional claims therefore the burden is on each of the Plaintiffs to establish, by a preponderance of the credible evidence each of the following elements:

1. That the Defendants performed acts which deprived Plaintiff and/or any number of the plaintiffs of his/her right to be free from a violation of rights as protected by the First Amendment (communication of free speech, and/or distribution of free speech, and/or the entitlement to receive/read protected speech) and/or the Equal Protection Clause of the Fourteenth Amendment,

2. That the Defendants acted under color of the authority of the State of New York (which I will explain shortly), and,

3. That the acts of Defendants(s) were the proximate or legal cause of damages sustained by Plaintiff.

**Authority**: 42 U.S.C. §1983; Eagleston v. Guido, 41 F.3d 865 (2d Cir. 1994); Swares v. City of New York, 985 F.2d 94 (2d Cir. 1993).

4

**Plaintiff's Instruction #3**

For purposes of Section 1983 acts are done "under color" of the authority of the State of New York, not only when State or local public officials act within the bounds or limits of their lawful authority, but also when such officials act without and beyond the bounds of their lawful authority. In order for unlawful acts of an official to be done "under color of state authority", however, the unlawful acts must be done while the official is purporting or pretending to act in the performance of his official duties. That is to say, the unlawful act must consist of an abuse or misuse of power which is possessed by the official only because he is an official. And the unlawful act or acts must be of such a nature, and be committed under such circumstances, that they would not have occurred except for the fact that the person committing them was an official purporting to exercise his or her official powers.

The federal statute under which Plaintiffs instituted this lawsuit covers not only acts done by an official under color of any state law, but also acts done by a government official under color of any ordinance or regulation issued by the state, a county, a town, or municipal official, and even acts done by an official under color of some State or local custom, practice or policy. Therefore the phrase "under color of state law" includes acts done under color of any state law or municipal ordinance, code, or regulation issued thereunder, or any state or local custom, practice or policy.

In this lawsuit Plaintiffs have adduced evidence regarding the conduct of the Defendants with respect to confiscation of The Westchester Guardian, its newsracks and the issuance of criminal appearance tickets to the individuals distributing the newspaper. Defendants, in turn, have not denied the confiscations and the issuance of those appearance tickets. Under the circumstances I instruct you that all of the actions engaged in by the Defendants were taken

under color of law. Each of these acts was performed by City officials, on-duty police and/or sanitation workers. I thus instruct you that as a matter of law the second element of the civil rights claims has been established and you need not deliberate about it.

With respect to the City of Yonkers, Plaintiffs have introduced evidence that criminal summonses were issued to the distributors of The Westchester Guardian pursuant to Section 100-35 of the City of Yonkers Code. They have also introduced evidence that the Mayor of the City of Yonkers Philip Amicone personally was involved in government actions to stop the dissemination of The Westchester Guardian within the City.

If you determine that City officials in fact resorted to Section 100-35 of the City Code to suppress or impede distribution of The Westchester Guardian, then I instruct you that as a matter of law the Defendant City of Yonkers is answerable in damages to any of the Plaintiffs who you determine suffered a violation of his/her First Amendment and/or Equal Protection rights.

Additionally if you determine that Philip Amicone - -  a policymaker for the City was personally involved in the governmental actions to impede or stop the dissemination of The Westchester Guardian, then you are similarly instructed that the City of Yonkers is answerable in damages to any of the Plaintiffs who you determine suffered a violation of his/her First Amendment or Equal Protection rights. Of course if you determine that Philip Amicone was personally so involved, then he too is liable in damages to any of the Plaintiffs who you determine suffered a violation of his/her First Amendment or Equal Protection rights.


**Authority: City of St. Louis v. Praprotnik, 485 U.S. 112 (1988); Monell v. Department of Social Services, 436 U.S. 658 (1978).**

**Plaintiffs Instruction #4**

With respect to the First Amendment claims there are several guiding principles which you must consider.

Speech on matters of public concern, such as that contained in the various editions of <u>The Guardian New</u> as edited and/or written by Richard Blassberg that have been received in evidence, is constitutionally protected under the First Amendment to the United States Constitution.

**Authority:**

**Plaintiff's Instruction # 5**

Of course when one engages in such protected speech as did Mr. Blassberg when he wrote and/or created the various editions of The Westchester Guardian in evidence, that activity in the abstract is largely meaningless unless the speaker - - in this case Richard Blassberg - - is able to communicate his ideas and/or thoughts and/or opinions to others. Put differently, the First Amendment protects not only the right to engage in protected speech but also the right to distribute (by means of newsracks and amongst other means persons distributing the newspaper within the City of Yonkers) protected speech so that it can be read and/or heard by willing listeners and/or readers.

Willful and/or reckless interference with the right of distribution violates the First Amendment rights of the speaker - - Mr. Blassberg - - and those engaged in the distribution of The Westchester Guardian and is actionable for damages.

**Authority:** March v. State of Alabama, 326 U.S.501(1946); Martin v. City of Struthers, Ohio, 319 U.S. 141, 143 (1943); Lovell v. City of Griffin, Georgia, 303 U.S. 444, 452 (1938); Hague v. Commission for Industrial Organization, 307 U.S. 496 (1939); Schneider v. State of New Jersey, 308 U.S.147 (1939).

**Plaintiffs' Instruction #6**

Just as distribution of protected speech is guaranteed by the First Amendment, so too is the right to receive and read that speech. For that reason the First Amendment protects the rights of readers to receive and read that protected speech. Willful and/or reckless interference with a reader's right to receive and read such speech violates the First Amendment rights of those readers.

**Authority**: Rossignol v. Voorrhaar, 316 F.3d 516 (4th Cir., 2003); 9/8/10 decision in the instant cases at pp 16-7.

**Plaintiff's Instruction #7**

With respect to the Equal Protection claims, certain additional legal rules must be applied by you to the evidence. As a general matter the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees the right to be free from invidious governmental discrimination; it requires that government treat all similarly situated people alike.

Claims alleging a denial of equal protection require proof of two essential elements. The plaintiff must prove that he/she was treated differently than others similarly situated and that this difference in treatment was motivated by an intent to discriminate on the basis of impermissible considerations such as to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

**Authority:** Harris v. McRaoe, 448 U.S. 297, 322 (1980); Harlem Associates v. Incorporated Village of Mineol, 273 F.3d 494, 499 (2d Cir. 2001). Lovell v. Comsewogue School District, 214 F. Supp.2d 319, 321-2 (E.D.N.Y., 2002)(citing Diesel v. Town of Lewisboro, 232 F.3d92, 203 (2d Cir., 2000).

**Plaintiffs' Request #8** (inference)

Where constitutionally protected speech is promptly followed by governmental conduct intended to suppress or retrain that speech, you as finders of fact can but do not have to infer that the governmental conduct was motivated by the content of the protected speech. Accordingly if you determine that Mr. Blassberg's protected speech was in fact promptly followed by governmental conduct intended to suppress or restrain that speech, then I instruct you that you may infer a causal relationship between the content of the speech and the effort to suppress/restrain it.

The same is true with respect to the distributors and the readers. If you determine that Mr. Blassberg's First Amendment protected speech was promptly followed by governmental conduct intended to suppress or restrain that speech, the I instruct you that you may infer with respect to the governmental actions taken regarding both the distributors and the readers that a causal relation exists between the content of the speech and the effort to suppress/restrain it.

**Authority**: 9/8/10 decision, p. 4.

Plaintiffs' Request **9**  (Blassberg)

  If you determine that Mr. Blassberg has proven by a preponderance of the credible evidence that the Defendants and/or either of the Defendants willfully and/or recklessly prevented the distribution of <u>The Westchester Guardian</u> within the City of Yonkers ( by confiscating the newspapers, confiscating the news racks, threatening the persons distributing the newspaper, issuing summonses to persons distributing the newspaper pursuant to Section 100-35 of the Yonkers City Code) because of the content of that newspaper, then you shall find such of those Defendants who did so liable in damages to Mr. Blassberg for violating his First Amendment rights.

**Plaintiffs' Request #10** First Amendment (Klapija, Guzman, Castillo, Smith, O'Neil, Ayala, Guevara, Smith, Gonzalez, and Salazar, hereafter referred to as the "distributors")

If you determine that the distributors and/or any of them have proven by a preponderance of the credible evidence that the Defendants and/or either of the Defendants willfully and/or recklessly prevented their distribution of The Westchester Guardian within the City of Yonkers (by confiscation of the newspapers, threats of arrest, intimidation) and/or charged them with violating Section 100-35 of the Yonkers City Code because of the content of that newspaper, then you shall find such of those Defendants who did so liable in damages to such of those individually named distributors .

**Plaintiffs' Request #11,** First Amendment (Lukaj, Roberto, Potente, Campbell, Kutjim Zherka, Hatixha Zherka, Heslop, Sayegh, Palermo, Dzihovic, Sookdeo, D'Intino, Carey, Mrajh, Ram, Nichole Pacheco (hereafter referred to as the "readers").

If you determine that the readers and/or any of them have proven by a preponderance of the credible evidence that the Defendants and/or any of the Defendants willfully and/or recklessly prevented the distribution of The Westchester Guardian within the City of Yonkers (by confiscating the newspapers, confiscating the news racks, threatening the distributors with arrest, issuing summonses to the distributors pursuant to Section 100-35 of the Yonkers City Code) to them because of the content of that newspaper, then you shall find such of those Defendants who did so liable in damages to such of those individually named distributors .

**Plaintiffs' Request #12,** Equal Protection (Blassberg)

If you determine that Mr. Blassberg has proven by a preponderance of the credible evidence that he was similarly situated to other newspaper editors and that Defendants and/or either of the Defendants accorded him disparate treatment with respect to his protected speech by reason of the content of <u>The Westchester Guardian</u> then you shall find such of those Defendants liable to Mr. Blassberg for violating his right to Equal Protection.

**Plaintiffs Request #13** (distributors)

If you determine that the distributors or any of the distributors has proven by a preponderance of the credible evidence that he/she was similarly situated to other persons who distribute newspapers in the City of Yonkers who were not denied the right to distribute and that Defendants and/or any of the Defendants accorded him/her disparate treatment with respect to his/her protected conduct by reason of the content of The Westchester Guardian then you shall find such of those Defendants liable to such of those distributors whose right to Equal Protection was violated.

**Plaintiffs' Request #14** (the readers as I defined them a few minutes ago)

If you determine that the readers and/or any of the readers were similarly situated to readers of other newspapers in the City of Yonkers who were not denied access to their newspaper(s) and that Defendants and/or any of the Defendants deprived them of their right to read <u>The Westchester Guardian</u> by reason of its content, then you shall find each of those Defendants liable to such of the readers whose right to Equal Protection was violated.

**Plaintiffs Request #14**

I will now give you instructions on how to calculate damages. The fact that I do so does not mean that I think you should award any damages. Whether or not to do so is entirely for you to decide.

In connection with the subject of damages you should be aware that it has been determined by the Federal Courts that a violation of the right to free speech, even for a brief period of time, constitutes irreparable injury.

For each claim on which a or any Defendant is liable, the Plaintiff's whose rights were violated is entitled to recover an amount which will reasonably compensate him/her for the loss and damages he/she has suffered as a result of such Defendant's unlawful conduct. Conduct by the Defendant that does not cause harm does not entitle Plaintiff to damages. By the same token, harm to Plaintiff which is not the result of unlawful conduct by Defendant does not entitle Plaintiff to damages.

If you find for the Plaintiffs or any of them on any or all of their claims, you may award reasonable compensation for physical pain and suffering, emotional injuries such as anxiety, emotional upset, mental anguish, emotional distress, shame, embarrassment, humiliation.

You are instructed to impose damages on each of the Defendants for those damages which you find him/her liable for on the claims at issue.

If you find that a Defendant acted unlawfully, a Plaintiff is entitled to damages to compensate him/her. You may not aware damages simply based on speculation or guess work. Any award must compensate a Plaintiff for his/her injuries and must have a basis in the evidence and be reasonable in light of that evidence.

**Authority:** <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980); <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)

**Plaintiff's Request #15**

If you find that any Plaintiff is entitled to a verdict in accordance with these instructions, but do not find that he/she has sustained substantial damages, then you may return a verdict for that Plaintiff in some nominal sum, such as one dollar.

The award of a nominal sum such as that would not preclude your awarding punitive damages in such amount as you determine appropriate, if you find that the award of punitive damages is justified under the circumstances.

**Authority: <u>Carey v. Piphus</u>, 435 U.s. 247 (1978).**

**Plaintiff's Request #16**

In this lawsuit each of the Plaintiffs seeks punitive damages against Philip Amicone, but not the City of Yonkers since punitive damages cannot be assessed against a municipality. In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive or exemplary damages in order to punish the wrongdoer for some gross misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find by a preponderance of the evidence in this case that any Plaintiff is entitled to a verdict for actual or compensatory damages (whether substantial or nominal) against any Defendant, and you further find that the acts or omissions of the Defendant Amicone which proximately caused actual injury or damages to a particular Plaintiff were maliciously, or wantonly, or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive and exemplary damages.

The act or failure to act is maliciously done if prompted by or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member. An act or failure to act is wantonly done if done in reckless or callous disregard of, or indifference to the rights of one or more persons including the injured person. An act or failure to act is oppressively done, if done in a way or manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether or not to make an aware of punitive damages, in addition to actual damages, is a matter exclusively within the province of the jury. If you unanimously find, on the basis of a

preponderance of the credible evidence in this case, that the acts or omissions of Defendant Amicone which proximately caused actual damages to any of the Plaintiffs were maliciously or wantonly or oppressively done, you may award punitive damages. However you should always bear in mind that such damages may be allowed only if you unanimously award the Plaintiff a verdict for actual or compensatory damages against the Defendant.

You should also bear in mind not only the conditions under which and the purposes for which the law permits an award of punitive damages to be made, but also the requirement of the law that the amount of such damages when awarded must be fixed with calm discretion and sound reason, and must never be either awarded or fixed in an amount because of any sympathy or bias or prejudice with respect to any party to the case.

**Authority: <u>Smith v. Wade</u>, 461 U.S. 30 (1983).**

**AS TO PHILIP AMICONE'S COUNTER AND CROSS-CLAIMS**

Plaintiff's Request #17

Philip Amicone has interposed against Richard Blassberg, Selim Zherka, and The Westchester Guadian respectively what we call a counterclaim and a cross-claim alleging that an allegation published in The Westchester Guardian that he "frequents strip clubs" and had a "lap dance" by a female entertainer at the VIP Club is *per se* defamatory and entitles him to damages without proof of any financial damages, as the statement purportedly exposes Mr. Amicone to public hatred, contempt, ridicule or disgrace or to discredit him in the conduct of his occupation, profession, trade or office. Mr. Blassberg, Mr. Zherka, and The Westchester Guardian assert that the statement is true, deny that the allegation is defamatory at all, contend that the statement was made solely for the purpose of evidencing their opinion that Mr. Amicone is a hypocrite, and assert in the alternative that even if the statement is not true Mr. Amicone is not entitled to any compensation whatsoever, as the statement did not tend to exposes Mr. Amicone to public hatred, contempt, ridicule or disgrace or to discredit him in the conduct of his occupation, profession, trade or office.

**New York's Pattern Jury Instruction 3:34 Complete Charge**
**Defamation/Libel-Public Official/Public Figure**

More specifically, this is an action to recover damages for libel. A libel is a writing or broadcast which tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace. Plaintiff Amicone, on the Counter and Cross claims, alleges that the defendants published an article in its newspaper which falsely alleged that the plaintiff "frequents strip clubs" and had a "lap dance" by a female entertainer at the VIP Club.

To recover damages for libel, Plaintiff Amicone has the burden of proving several distinct elements. If the plaintiff has proved all of these elements, you will decide in plaintiff's favor and go on to determine the amount of damages. However, if plaintiff failed to prove any one of these elements, plaintiff may not recover.

First, Plaintiff Amicone must prove by a fair preponderance of the credible evidence that the statement was defamatory, meaning that the statement had a tendency to expose Amicone to public hatred, contempt, ridicule or disgrace.

Second, plaintiff must prove by a fair preponderance of the credible evidence that the statement referred to the plaintiff, meaning that the statement would be reasonably understood to be about the plaintiff.

Third, plaintiff must prove by a fair preponderance of the credible evidence that defendants published or broadcast the statement, meaning that the defendants communicated the statement to someone other than the plaintiff.

Fourth, Amicone must prove by clear and convincing evidence that the statement was false, meaning substantially untrue.

Fifth, Amicone must prove by clear and convincing evidence that when defendants made the statements, defendants knew that they were false or acted in reckless disregard of the truth or falsity of the statement.

You will notice that I told you that the Plaintiff Amicone must prove three of these elements of his libel claim by a "fair preponderance of the credible evidence" and two elements by "clear and convincing evidence."

What does "a fair preponderance of the credible evidence" mean? The credible evidence means the testimony or exhibits that you find to be worthy of belief. A preponderance means the

greater part of such evidence. That does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its convincing quality, the weight and the effect that it has on your mind. The law requires that, in order for Amicone to sustain his burden of proof, the evidence that supports his claim must appeal to you as more nearly representing what took place than that opposed to his claim. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must decide the question in favor of the defendants. If the evidence favoring the plaintiff's claim outweighs the evidence opposed to it then you must decide in favor of the plaintiff.

As I told you, Plaintiff Amicone has the burden of proving, by clear and convincing evidence, that the statements were false and that when defendants made the statements, defendants knew that they were false or acted with reckless disregard of whether it was true or false. "Clear and convincing evidence" is a more demanding standard of proof than a fair preponderance of the credible evidence. Clear and convincing evidence is evidence that satisfies you that there is a high degree of probability that the statement was substantially untrue and that when defendants made the statement, defendants knew that it was false or acted with reckless disregard of whether it was true or false.

The first question for you to decide is whether defendants' statement was defamatory. A statement is defamatory if it tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace—that is, if it would tend to lead the average person in the community to form an evil or bad opinion of the plaintiff. A statement is also defamatory if it tends to discredit the plaintiff in the conduct of his occupation, profession, trade or office.

Not every unpleasant or uncomplimentary statement is defamatory. A statement that is

merely unpleasant, offensive or embarrassing, or that hurts the plaintiff's feelings, is not necessarily defamatory. Because language often has different meanings, the law imposes upon Amicone the burden of proving that the statement about which he complains would in fact be understood by the average person as defamatory.

Plaintiff claims that the defendants published an article in its newspaper that stated Amicone "frequents strip clubs" and had a "lap dance" by a female entertainer at the VIP Club. Specifically, plaintiff claims that the foregoing statement was defamatory.

If you find that the statement did not tend to expose Amicone to public hatred, contempt, ridicule or disgrace or to discredit Amicone in the conduct of his occupation, profession, trade or office, then you need proceed no further and report to the Court. If you find from the evidence that the plaintiff has proved that the statement in the article tended to expose the plaintiff to public hatred, contempt, ridicule or disgrace or to discredit the plaintiff in the conduct of his occupation, profession, trade or office, then you must find the statement defamatory and proceed to consider the remaining elements.

The second element that the Plaintiff Amicone must prove is that the statement referred to him, that is, the plaintiff must prove that the statement was communicated to third persons who reasonably would have understood the statement to refer to the plaintiff.

If you find from facts that the article referred to the plaintiff, then you must consider the remaining elements of plaintiff's case.

The third element that Plaintiff Amicone must prove is that defendants published the statement, that is, that the defendants' statement was read by some person or persons other than the plaintiff.

Plaintiff alleges that the defendants published in The Westchester Guardian the statement that

he "frequents strip clubs" and had a "lap dance" by a female entertainer at the VIP Club.

If you find that defendants' statements were not read by someone other than the plaintiff, then you need proceed no further and report to the Court. If you find that defendants' statement was read by someone other than the plaintiff, then you must proceed to consider the other elements of plaintiff's case.

The fourth element that the Plaintiff Amicone must prove, and this must be proved by clear and convincing evidence, as I have defined that term for you, is that the statement at issue was false. A statement is false if it is not substantially true. Minor inaccuracies in the statement may be disregarded in determining whether the statement is false.

You will determine from the evidence presented what the truth was and then compare that with the statement which you find was made by the defendants, taking that statement according to the ordinary meaning of its words. If you find that the statement was true, then you need proceed no further and report to the Court. If you find that the statement was false, then you must proceed to consider the other elements of plaintiff's case.

The fifth element that Plaintiff Amicone must prove—and this must be proved by clear and convincing evidence—as I have defined that term for you, is that when defendants made the statement, defendants knew that it was false or acted in reckless disregard of its truth or falsity. Reckless disregard means that when defendants made the statement, they had serious doubts as to the truth of the statement or made the statement with a high degree of awareness that it was probably false.

If you find that Plaintiff Amicone has not proved by clear and convincing evidence that when defendants made the statement they knew that it was false or acted in reckless disregard of its truth or falsity, then you need proceed no further and report to the Court. If you find that the

Plaintiff Amicone has proved by clear and convincing evidence that when defendants made the statement they knew that it was false or acted in reckless disregard of its truth or falsity, then you will proceed to consider

the question of damages.

The fact that I instruct you on the law of damages must not be taken as an indication that you should decide for the plaintiff. You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendants.

If you decide that the plaintiff is entitled to recover, you will award an amount as, in the exercise of your good judgment and common sense, you decide is fair and just compensation for any injury to plaintiff's reputation and any humiliation and mental anguish in Plaintiff's public and private life which you decide was caused by defendants' statement. In fixing that amount you should consider the plaintiff's standing in the community, the nature of defendants' statement made about the plaintiff, the extent to which the statement was circulated, the tendency of the statement to injure a person such as the plaintiff, and all of the other facts and circumstances in the case. These damages cannot be proved with mathematical accuracy. Fair compensation may vary, ranging from one dollar, if you decide that there was no injury, to a substantial sum if you decide that the injury was substantial.

**Authority**:  9/8/10 decision, pp. 22-4; St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Garrison v. State of Louisiana, 379 U.S. 64, 74 (1964) New York Times Co. v. Sullivan, 376 U.S. 254, 279 (1964); Cantwell v. State of Connecticut, 310 U.S. 296, 310 (1940); Sweeney v. Prisoners' Legal Services of New York, Inc., 84 N.Y.2d 7786, 793 (1995).

If you unanimously determine that Plaintiff Amicone has proven each of the elements as I have explained them to you, and in doing so has met the evidentiary standard I have explained to you, then you will find for Mr. Amicone and against either or both Mr. Blassberg, The Westchester Guardian ,and Mr. Zherka on the counter and cross claim.

On the other hand if you determine Plaintiff Amicone has failed to establish any one of the contested issues in accordance with my instructions, then you will find against him and in favor of Mr. Blassberg, The Westchester Guardian, and Mr. Zherka.